

1

2

3

4

5

6

7

8

9      UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11

12   LAURA LOPEZ; FRANCISCO LOPEZ;      )   CASE NO. CV 13-04782 MMM (AGRx)
     FABIAN BERMUDEZ; DAVID LOPEZ;      )
13   AIDA OREA; SILVIA ARAIZA; AND      )   ORDER GRANTING IN PART AND
     SERGIO RIVAS,                      )   DENYING IN PART DEFENDANT'S
14                                      )   MOTION TO DISMISS
                    Plaintiffs,         )
15                                      )
            vs.                         )
16                                      )
     FEDERAL NATIONAL MORTGAGE          )
17   ASSOCIATION, a Government          )
     Sponsored Enterprise, AKA Fannie Mae; )
18   and DOES 1 through 100,            )
                                        )
19                  Defendants.         )

20         Laura Lopez, Francisco Lopez, Fabian Bermudez, David Lopez, Aida Orea, Silvia Araiza,

21   and Sergio Rivas filed this action in Los Angeles Superior Court on May 17, 2013 against Federal

22   National Mortgage Association (aka Fannie Mae) ("FNM") and certain fictitious defendants.[1]

23   FNM timely removed the action to federal court on July 2, 2013, invoking the court's diversity

24   jurisdiction.[2]  Plaintiffs plead six causes of action: (1) unlawful collection of rent on untenantable

25   dwelling in violation of California Civil Code § 1942.4; (2) breach of the implied warranty of

26   _____

27      [1]Notice of Removal ("Removal"), Docket No. 1 (July 2, 2013), Exh. A (Complaint).

28      [2]Id. at 1.  Plaintiffs did not serve FNM until June 3, 2013.  (Id. at 3.)  The removal was
     therefore timely under 28 U.S.C. § 1446(b).

1  habitability; (3) breach of the covenant of quiet enjoyment; (4) nuisance in violation of California

2  Civil Code § 3479; (5) violation of California's Unfair Competition Law, California Business and

3  Professions Code §§ 17200 et seq.; and (6) negligence.  On July 15, 2013, FNM filed a motion

4  to dismiss plaintiffs' complaint.[3]  Plaintiffs oppose the motion.[4]

5

6  ## I.  FACTUAL BACKGROUND

7        Plaintiffs allege that each of them other than Orea has been a tenant in one of two units in

8  an apartment building located at 3832 & 3834 S. Crawford Street, Los Angeles, California,

9  90011, since approximately 2001.[5]  They assert that Orea has been a tenant in unit two of the

10  apartment building since approximately 1997.[6]  Plaintiffs contend that the apartment is "run-

11  down" and "vermin infested."[7]  The Los Angeles Housing Department ("LAHD") has allegedly

12  conducted multiple inspections of the property, which have resulted in citations for violations of

13  the California Civil Code, California Health and Safety Code, and the Los Angeles Municipal

14  Code.[8]  Specifically, plaintiffs assert that LAHD has cited the owner for more than eighteen

15  violations, including, *inter alia*, failure to maintain the premises free of vermin and/or rodent

16  infestation; failure to maintain the counters/drain boards of kitchen sinks, bathrooms lavatories,

17  and adjacent wall and/or floor surfaces in a manner that will prevent water damage, and/or in

18  clean and sanitary condition, free from dirt and foreign materials; failure to maintain safe and

19  sanitary floor coverings; failure to provide the required electrical continuity by maintaining

20  conduit properly connected and free from breaks in the area below the kitchen sink and/or at the

21  _____

22  [3]Motion to Dismiss Plaintiffs' Complaint ("Motion"), Docket No. 7 (July 15, 2013).

23  [4]Opposition to Defendant's Motion to Dismiss ("Opposition"), Docket No. 11 (Sept. 9,
24  2013).

25  [5]Complaint, ¶¶ 1, 14-20.

26  [6]*Id.*, ¶ 18.

27  [7]*Id.*, ¶ 1.

28  [8]*Id.*, ¶ 3.

exhaust vent above the kitchen cooking area; and failure to maintain the existing building, structure, premises, or portion thereof in a safe and sanitary condition, in good repair, free from graffiti, trash, debris, rubbish, overgrown vegetation, or similar material.[9]  On October 6, 2009, LAHD issued a notice and order to comply, giving the property owner 35 days to abate the violations.[10]  On December 4, 2009, after conducting a re-inspection, LAHD found that defendant had failed to correct the cited violations.[11]  Plaintiffs contend that these health and safety violations have caused them to suffer, or have exacerbated already existing, health problems, including frequent colds, allergies, and rashes.[12]  They also assert they have been exposed to mold.[13]  They allege that these conditions have caused them severe emotional distress, including stress, lack of sleep, frustration, annoyance, and anxiety.[14]

Plaintiffs contends that FNM became the owner and manager of the building on June 15, 2010.[15]  FNM purchased the building at a nonjudicial foreclosure sale from Sandra K. McBeth, who had owned it since 2004.[16]  Because of conditions at the apartment building, and the unaddressed citations issued by LAHD, LAHD placed the apartment building in the Rent Escrow Account Program ("REAP") on June 17, 2010.[17]  Plaintiffs allege that once a property is placed

---

[9]*Id.*, ¶ 5.

[10]Id., ¶ 4.

[11]*Id.*

[12]*Id.*, ¶ 6.

[13]*Id.*

[14]*Id.*

[15]*Id.*, ¶ 2.

[16]Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Exh. 1 (Trustee's Deed Upon Sale at 2), Docket No. 8 (July 15, 2013).  The court takes judicial notice of this document for reasons stated *infra*.

[17]Complaint, ¶ 13; RJN, Exh. 3 (Notice of building(s), structure(s), or premises placed into the rent escrow account program (REAP) at 2).

in the REAP, rents are reduced up to fifty percent and tenants may pay their rent to an LAHD-maintained escrow account rather than to the landlord.[18]

Plaintiffs assert that during the time FNM has owned the building, conditions have either continued to deteriorate or have been inadequately remedied or repaired by FNM.[19]  They assert, for example, that, among other poor conditions, they have been exposed to cockroach and rodent infestations; lack of and/or faulty electrical wiring; inoperable or defective windows and doors; deteriorated walls, floors, and ceilings; faulty and leaking pipes and defective plumbing; and a damaged/inoperable gate.[20]  Plaintiffs allege that cockroaches nest inside their electrical appliances, causing property damage, and that they contaminate plaintiffs' food, crawl over plaintiffs while they are sleeping, and deposit their excrement throughout plaintiffs' apartments.[21] They allege that the cockroach infestation has caused them to suffer rashes, skin eruptions and other ailments.[22]

Plaintiffs additionally contend that the gate to the building collapsed and that FNM failed to repair or replace it.[23]  They assert that rather than repairing the mold on restroom walls, FNM painted over it.[24]  They also maintain that FNM has not stopped the cockroach infestation, that windows are missing glass and screens, that doors are off their hinges, and that the walls are cracking and peeling.[25]  They assert that as a result of FNM's failure to secure and maintain the

---

[18]Complaint, ¶ 13.

[19]*Id.*, ¶ 9.

[20]*Id.*, ¶ 7.

[21]*Id.*, ¶ 8.

[22]*Id.*

[23]*Id.*, ¶ 9.

[24]*Id.*

[25]*Id.*

1  apartment, nonresidents have trespassed, leaving drug paraphernalia, condoms, and trash behind.[26]

2  Plaintiffs allege that they have complained about conditions in the building to FNM, but that FNM

3  has not effectively addressed them, causing plaintiffs continued emotional distress.[27]  On May 3,

4  2013, FNM sold the property to LA Legends LLC ("LA Legends").[28]

5

6                                    **II.  DISCUSSION**

7  **A.      Defendant's Request for Judicial Notice**

8          FNM requests that the court take judicial notice of three documents that purportedly relate

9  to plaintiffs' claims.  Plaintiffs do not oppose the request.  In deciding a Rule 12(b)(6) motion, the

10  court generally looks only to the face of the complaint and documents attached thereto.  *Van*

11  *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc.*

12  *v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court normally

13  must convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers

14  evidence outside the pleadings. . . .  A court may, however, consider certain materials –

15  documents attached to the complaint, documents incorporated by reference in the complaint, or

16  matters of judicial notice – without converting the motion to dismiss into a motion for summary

17  judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v.*

18  *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources

19  courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

20  documents incorporated into the complaint by reference, and matters of which a court may take

21  judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may

22  consider a document whose contents are alleged in a complaint, so long as no party disputes its

23  authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119

24  (9th Cir. 2002).

25  ――――――――――――――

26      [26]*Id.*

27      [27]*Id.*, ¶ 10.

28      [28]RJN, Exh. 2 (Grant Deed at 2).

Thus, in ruling on a motion to dismiss, the court can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence. FED.R.EVID. 201. Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Courts have held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).

Defendants ask that the court take notice of three documents recorded by the Los Angeles County Clerk and Recorder: (1) a trustee's deed upon sale; (2) a grant deed; and (3) a notice of building(s), structure(s), or premises placed into the Rent Escrow Account Program.[29] The documents defendants seek to have the court consider are each time and date stamped, and have a record number. Other courts have taken judicial notice of such documents as public filings. See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider

---

[29]*Id.* at 2.

1  these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700,

2  *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell

3  under deed of trust, and notice of trustee's sale were matters of public record and thus proper

4  subjects of judicial notice). The court therefore grants FNM's request for judicial notice and will

5  consider the documents it has proffered in deciding the motion to dismiss.

6  **B.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(7)**

7  As a threshold matter, FNM argues that the complaint should be dismissed in its entirety

8  because plaintiffs have not joined McBeth or LA Legends, purportedly indispensable parties.[30]

9  "Rule 19 of the Federal Rules of Civil Procedure governs compulsory joinder in federal district

10  courts." *Walter v. Drayson*, 496 F.Supp.2d 1162, 1172 (D. Haw. 2007) (citing *EEOC v.*

11  *Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005), cert. denied, 546 U.S. 1150 (2006)).

12  Rule 19(a) states, in relevant part:

13      "A person who is subject to service of process and whose joinder will not deprive

14      the court of subject-matter jurisdiction must be joined as a party if: (A) in that

15      person's absence, the court cannot accord complete relief among existing parties;

16      or (B) that person claims an interest relating to the subject of the action and is so

17      situated that disposing of the action in the person's absence may: (i) as a practical

18      matter impair or impede the person's ability to protect the interest; or (ii) leave an

19      existing party subject to a substantial risk of incurring double, multiple, or

20      otherwise  inconsistent  obligations  because  of  the  interest."

21      FED.R.CIV.PROC. 19(a)(1).

22  If it is not feasible to join a party found to be "necessary" under Rule 19(a), the court must

23  consider whether "in equity and good conscience, the action should proceed among the existing

24  ───────────────

25  [30]Motion at 4-5. The 2007 amendment to Rule 19 changed the language of the rule,
eliminating the term "indispensable" and replacing "necessary" with "required." The changes

26  were intended to be stylistic only. FED.R.CIV.PROC. 19, Advisory Committee Notes; see also

27  *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 855 (2008). Because the traditional terms
are terms of art used by courts and commentators and because the parties have used the traditional

28  terms in their briefs, for clarity the court does the same here.

1  parties or should be dismissed." Stated differently, the court must determine whether the

2  necessary party is also "indispensable." FED.R.CIV.PROC. 19(b); see also, e.g., *Estate of*

3  *Burkhart v. United States*, No. C 07-5467 PJH, 2008 WL 4067429, *6 (N.D. Cal. Aug. 26, 2008)

4  ("If a party is 'necessary' and cannot be joined, 'the court must determine whether, in equity and

5  good conscience, the action should proceed among the existing parties or should be dismissed,'"

6  quoting FED.R.CIV.PROC. 19(b)).

7      In making this determination, courts must consider:

8      "(1) the extent to which a judgment rendered in the person's absence might

9      prejudice that person or the existing parties; (2) the extent to which any prejudice

10     could be lessened or avoided by: (A) protective provisions in the judgment;

11     (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in

12     the person's absence would be adequate; and (4) whether the plaintiff would have

13     an adequate remedy if the action were dismissed for nonjoinder." *Id.*

14      Rule 19 thus requires "three successive inquiries": (1) whether a nonparty is "necessary"

15  and should be joined under Rule 19(a); (2) if so, whether it is feasible to order the absent party

16  joined; and (3) if joinder is not feasible, whether the case can proceed without the party, or

17  whether instead the party is "indispensable" such that the action must be dismissed.  See, e.g.,

18  *Walter*, 496 F.Supp.2d at 1173; see also, e.g., *Disabled Rights Action Committee v. Las Vegas*

19  *Events, Inc.*, 375 F.3d 861, 867 n. 5 (9th Cir. 2004) ("The terms 'necessary' and 'indispensable'

20  are terms of art in Rule 19 jurisprudence: 'Necessary' refers to a party who should be '[j]oined

21  if [f]easible.' . . . 'Indispensable' refers to a party whose participation is so important to the

22  resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed"

23  (citations omitted)).  The Ninth Circuit has cautioned that the Rule 19 inquiry "is a practical, fact-

24  specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River*

25  *Project Agricultural Improvement and Power District*, 276 F.3d 1150, 1154 (9th Cir. 2002).

26      A party may move to dismiss a case for failure to join a necessary and indispensable party

27  under Rule 19.  FED.R.CIV.PROC. 12(b)(7); see also, e.g., *Contractors Bonding and Insurance*

28  *Company v. American Lighting Industry, Inc.*, No. CV 08-813-VAP (JWJx), 2008 WL 4447680,

*2 (C.D. Cal. Oct. 1, 2008); *Brosnahan v. Pozgay*, No. CV 06-2195 DMS (NLS), 2007 WL 173969, *2 (S.D. Cal. Jan. 17, 2007).  When seeking dismissal for nonjoinder of a necessary and indispensable party under Rules 12(b)(7) and 19, the moving party bears the burden of adducing evidence in support of the motion.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Contractors Bonding and Insurance Company*, 2008 WL 4447680 at *2 (citing *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994)).

### C.   Whether Plaintiff's Complaint Should be Dismissed Under Rule 12(b)(7)

FNM argues that McBeth and LA Legends are indispensable parties.  It asserts McBeth owned the property at the time the city issued the citations and for two years thereafter, and that she created, allowed or contributed to the defects the city identified.[31]  As a result, FNM concludes, plaintiffs' failure to include McBeth as a defendant in this case deprives the court of its ability to provide complete relief and dispose of the matter.[32]  Based on these allegations, it appears FNM is arguing that McBeth is liable to the plaintiffs for demanding and/or collecting rent during the period before FNM purchased the apartment building or alternatively, that McBeth is a joint tortfeasor.  Simply because a party may be jointly liable, however, does not render it a necessary party.  See *Hurley v. Horizon Project, Inc.*, No. CV–08–1365–ST, 2009 WL 5511205, *7 (D. Or. Dec. 3, 2009) ("Citing the long-standing rule reflected in the Advisory Committee Notes, and finding nothing to the contrary in the governing state tort law, [the Supreme Court] held that a joint tortfeasor is not a necessary party to a lawsuit under FRCP 19.  It then held that an inquiry under FRCP 19(b) was unnecessary where the requirements of FRCP 19(a) were not met," citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990); *Solis v. Couturier*, No. 2:08–cv–02732–RRB–GGH, 2009 WL 3055207, *2–3 (E.D. Cal Sept. 17, 2009) (holding that potential joint tortfeasors are permissive and not indispensable parties); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06–01686 SI, 2007 WL 205068, *2–3 (N.D. Cal. Jan. 25, 2007) (denying a motion to join or dismiss for failure to join a party who was a joint tortfeasor)).

---

[31]*Id.* at 4.

[32]*Id.*

1   The "complete relief" clause of Rule 19, moreover, is concerned with "relief as between
2   the persons already parties, not as between a party and the absent person whose joinder is sought."
3   *Eldredge v. Carpenters 46 N. Cal. Counties Jt. Apprenticeship and Training Comm.*, 662 F.2d
4   534, 537 (9th Cir. 1981). FNM may have shown that plaintiffs have a separate claim against
5   McBeth based on her collection of rent during the period she owned the property after it failed
6   inspection. Plaintiffs may therefore be able to join McBeth permissively. This does not,
7   however, make McBeth a necessary party in plaintiffs' action against FNM for the rent it collected
8   during the time it owned the building and bore responsibility of maintaining it in a habitable
9   condition. If FNM is found liable on any of plaintiffs' causes of action, the court or the jury can
10   award damages against FNM. Such relief would be complete as between plaintiffs and FNM;
11   McBeth's involvement would not be required.

12   FNM has also not shown that McBeth has "claimed an interest relating to the subject of the
13   action" that could be impeded or could leave FNM at substantial risk of incurring inconsistent
14   obligations. See FED.R.CIV.PROC. 19(a)(1)(B). Under the "claimed interest" clause of Rule 19,
15   "it is inappropriate for one defendant to attempt to champion [the] absent party's interests."
16   *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994).
17   Stated differently, unless the absent party has actually claimed it has a legally protected interest
18   in the action, she cannot be deemed a necessary party under Rule 19. *United States v. Bowen*,
19   172 F.3d 682, 688-89 (9th Cir. 1999) (citing *Thomas, Head and Greisen Employees Trust v.*
20   *Buster*, 95 F.3d 1449, 1460 n. 18 (9th Cir. 1996) and *Morongo Band of Mission Indians*, 34 F.3d
21   at 908). FNM has not shown that McBeth has claimed an interest in the subject of this action and
22   has accordingly failed to show that she is a necessary party. See *Bowen*, 172 F.3d at 688
23   (affirming the denial of a motion to dismiss, and finding that a non-party who knew of the suit but
24   did not assert an interest in it had not claimed an interest); *Principal Life Insurance Co. v.*
25   *Robinson*, No. CV 00-1345-BR, 2001 WL 34045850, *5 (D. Or. July 5, 2001) (denying a motion
26   to dismiss, and stating that "[t]here is no evidence before the Court that either [alleged necessary
27   party] claims any interest in this litigation"). Because FNM has not shown that McBeth is a
28   necessary party, the court denies its motion to dismiss for failure to join McBeth.

As respects LA Legends, FNM argues that it is the current owner of the property and that, because plaintiffs allege the violations are ongoing, LA Legends must be joined as a party.[33]  As it argued with respect to McBeth, FNM appears to assert that LA Legends is liable for collecting rent from plaintiffs from and after the date it became the owner of the property and/or that LA Legends is a joint tortfeasor.  As discussed, however, the fact that LA Legends may be a joint tortfeaser does not make it a necessary party.  The fact that plaintiffs may be able to recover against LA Legends for its collection of rent in violation of § 1942.4 also does not establish that it is a necessary party.  As with McBeth, the court can grant "complete relief" between the existing parties without joining LA Legends.  If FNM is found liable on any of plaintiffs' causes of action, the court or the jury can award damages against FNM.  Such relief would be complete as between plaintiffs and FNM; LA Legends' involvement would not be required.

Plaintiffs also request that the court enjoin FNM by requiring it to repair the substandard conditions at the apartment building pursuant to § 1942.4(c).[34]  FNM argues that, because it is no longer the property owner, it cannot be required to repair the property and that any injunction would have to issue against LA Legends – the current owner of the property.[35]  It concludes that because plaintiffs seek such an injunction, LA Legends is a required party.[36]  Plaintiffs do not address this point except to argue that they can amend their complaint to remove the prayer for injunctive relief should the court order them to do so.[37]  In assessing whether the court can grant complete relief between the existing parties in the absence of a purportedly necessary party, the court is not bound by the forms of relief sought in the complaint.  The focus, rather, is on whether the district court can formulate relief that would meaningfully resolve the dispute between the

---

[33]*Id.* at 5.

[34]Complaint, ¶ 35.

[35]Motion at 5.

[36]*Id.*

[37]Opposition at 8.

11

parties. *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) ("[T]he court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties"). The complete relief clause is "concerned with consummate rather than partial or hollow relief as to those already parties." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983). In *Disabled Rights Action Committee*, the Ninth Circuit considered a complaint that sought an injunction requiring defendants to cease operating an arena unless and until they could do so in full compliance with the Americans with Disability Act. 375 F.3d at 879. The defendants, however, did not own the arena, argued that they could not be enjoined from operating it, and asserted the actual owner of the property was a necessary party that had to be joined. See *id.* at 867. The Ninth Circuit concluded that the owner was not a necessary party, and implicitly held that the district court was not bound by the prayer for relief in the complaint; it noted that the district court could have fashioned a different injunction that would have provided meaningful relief by requiring defendants to take certain actions within their control. *Id.* at 879-80 ("In reaching its decision, the district court entirely failed to consider whether remedies not requiring [the arena owner's] cooperation would provide meaningful relief. . . . Meaningful relief could . . . be granted by enjoining [the defendants] from making certain kinds of operational decisions regarding conditions over which they have control – e.g., enjoining them from removing accessible floor seating, or requiring the erection of temporary ramps or lifts. Meaningful relief could also be granted by requiring [the defendants] to hold the Rodeo at an accessible venue either immediately, or in the future, after the current provisions of its licensing agreement expire. These forms of relief, which are neither hollow nor meaningless, would be available with or without [the arena owner's] participation").

Similarly, here, the court must ask whether it can craft meaningful relief between plaintiffs and FNM in the absence of LA Legends. The fact that plaintiffs appear improperly to seek an

injunction that could issue only against LA Legends is not controlling.[38]  Although the court could not award all of the relief sought in the complaint – i.e., it could not require FNM to remedy conditions at the property because FNM is no longer the property owner –[39] the court could, if appropriate, craft meaningful relief by awarding plaintiffs damages against FNM.  Plaintiffs' claims against FNM are necessarily based on its prior conduct; because it has sold the property, there is no likelihood FNM will cause them the same type of injury in the future.  An award of damages, therefore, could completely resolve plaintiffs' claims against FNM.  Any award of money damages, moreover, would be consummate, and not hollow, as it would adequately redress plaintiffs' past injuries.[40]  The fact that plaintiffs may have a separate cause of action against LA Legends for collecting rent and the fact that plaintiffs might be able to seek injunctive relief requiring LA Legends to remedy any continuing substandard conditions at the apartment building, does not make LA Legends a necessary party to this action.  See *In re Wells Fargo Residential Mortg. Lending Discrimination Litigation*, No. M:08–CV–1930 MMC, 2009 WL 2473684, *4 (N.D. Cal. Aug. 11, 2009) ("Wells Fargo also argues, referencing the [plaintiffs'] respective prayers for an order of attachment as to any 'ill-gotten funds,' that the Brokers were paid for the services rendered to plaintiffs by the use of yield spread premiums. Consequently, according to Wells Fargo, because the Brokers 'shared' in the 'ill-gotten' funds, adjudication of the issue of

---

[38]It is unclear whether plaintiffs would be able to obtain an injunction against LA Legends. Plaintiffs' opposition states that they have not brought this action against LA Legends because LA Legends has only owned the property for four months and there is insufficient evidence at this juncture that it has demanded rent while refusing to remedy substandard conditions at the apartment building.  (Opposition at 8.)

[39]The court considers this issue *infra* in analyzing FNM's rule 12(b)(6) motion to dismiss.

[40]This is not the type of case, for example, where any relief granted would be hollow because it would not bind a third party who was a cause of the same injury to the plaintiff as defendant.  See, e.g., *Wright v. Incline Village General Imp. Dist.*, 597 F.Supp.2d 1191, 1207 (D. Nev. 2009) (holding that the third party beneficiaries of a restrictive covenant were required parties where an injunction against the property owner would not provide the relief plaintiff sought because it would not bind the third party beneficiaries, who could sue to enforce the covenant in a way that injured the plaintiff).

who received 'ill-gotten funds' would be 'incomplete' if the Brokers are not joined as defendants. Even if a finding were to be made that the Brokers had received 'ill-gotten funds,' however, Wells Fargo fails to show how such finding would preclude the Court from granting 'meaningful' relief to plaintiffs; Wells Fargo does not explain, for example, why an order of restitution, if otherwise appropriate, could not be limited to the portion of 'ill-gotten funds' received by Wells Fargo. In sum, Wells Fargo has failed to show the Court would be precluded from 'fashioning meaningful relief' if the Brokers are not joined as defendants. See *Disabled Rights Action Committee*, 375 F.3d at 879" (internal citations omitted)). There is no evidence before the court, moreover, that LA Legends has claimed an interest in the action. FNM has therefore not shown that LA Legends is a necessary party and the court accordingly denies its motion to dismiss for failure to join LA Legends.

Even had FNM demonstrated that McBeth and LA Legends were both necessary and indispensable parties, it has proffered no evidence concerning the second inquiry required by Rule 19 – whether it is feasible to join necessary parties as defendants. Under Rule 19, the court can only dismiss a plaintiff's complaint where joinder of necessary and indispensable parties is not feasible. As noted, the basis for the court's jurisdiction in this case is diversity jurisdiction, because plaintiffs are all California citizens while FNM is citizen of Washington, D.C. It would not appear feasible to join McBeth or LA Legends if either is a California citizen because doing so would destroy complete diversity. See 28 U.S.C. § 1332(a); *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction"); *SCI CA. Funeral Services, Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450, 452 (C.D. Cal. 2013) ("Joinder is not feasible . . . when joinder would destroy subject matter jurisdiction"); *Villegas v. Pinos Produce, Inc.*, No. 12–CV–2889–MMA(RBB), 2013 WL 784894, *4 (S.D. Cal. Mar. 1, 2013) ("Here, joinder of Mr. Rodriguez, a citizen of Mexico, would destroy diversity jurisdiction and thereby divest this Court of subject matter jurisdiction over the matter. Therefore, joinder is not feasible"); *Albers v. PMP Access Fund Manager, LLC*, Nos. 5:10–CV–1054 JF (HRL),

1    5:10–CV–1057 JF (HRL), 2010 WL 2486369, *4 (N.D. Cal. June 16, 2010) ("It is undisputed

2    that joinder is not feasible in federal court because the sole basis of federal jurisdiction is diversity,

3    and the joinder of Access Fund would destroy complete diversity among the parties").  Because

4    FNM has adduced no evidence regarding the feasibility of joinder, however, the court cannot

5    determine whether, assuming McBeth and LA Legends are indispensable parties, their absence

6    would require dismissal or joinder.  For this additional reason, FNM has failed to meet its burden

7    of demonstrating that dismissal is warranted under Rules 12(b)(7) and 19.  Consequently, the court

8    denies FNM's motion to dismiss under Rule 12(b)(7).

9        **D.    Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)**

10       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

11   A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal

12   theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri*

13   *v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual

14   allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences

15   from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38

16   (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

17       The court need not, however, accept as true unreasonable inferences or conclusory legal

18   allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S.

19   544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

20   need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

21   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

22   the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain

23   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

24   . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court

25   to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

26   *v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must

27   be enough to raise a right to relief above the speculative level, on the assumption that all the

28   allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United*

*States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### E.   Whether the Court Should Dismiss Plaintiffs' First Cause of Action for Violation of California Civil Code § 1942.4

Although FNM's motion claims to seek dismissal of all of plaintiffs' causes of action, its substantive argument relates only to plaintiffs' first cause of action for Unlawful Collection of Rent on Untenantable Dwelling, in violation of California Civil Code § 1942.4.[41]  Section 1942.4 provides that:

> (a) A landlord of a dwelling may not demand rent, collect rent, issue a notice of a rent increase, or issue a three-day notice to pay rent or quit pursuant to subdivision (2) of Section 1161 of the Code of Civil Procedure, if all of the following conditions exist prior to the landlord's demand or notice:
>
> (1) The dwelling substantially lacks any of the affirmative standard characteristics listed in Section 1941.1 or violates Section 17920.10 of the Health and Safety Code, or is deemed and declared substandard as set forth in Section 17920.3 of the Health and Safety Code because conditions listed in that section exist to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants of the dwelling.
>
> (2) A public officer or employee who is responsible for the enforcement of any housing law, after inspecting the premises, has notified the landlord or the landlord's agent in writing of his or her obligations to abate the nuisance or repair the substandard conditions.
>
> (3) The conditions have existed and have not been abated 35 days beyond the date of service of the notice specified in paragraph (2) and the delay is without good cause. For purposes of this subdivision, service shall be complete at the time of

---

[41]Motion at 1, 2-4.

1    deposit in the United States mail.

2         (4) The conditions were not caused by an act or omission of the tenant or lessee in

3         violation of Section 1929 or 1941.2.

4    FNM argues that plaintiffs cannot state a claim under § 1942.4 because the "alleged demands for

5    rent could not have been wrongful because the REAP ordinance . . . specifically set forth

6    Plaintiffs' rental amount requirements, notwithstanding the City's citation of the Property for

7    purported habitability issues."[42]  The thrust of FNM's argument appears to be that plaintiffs cannot

8    state a claim under § 1942.4 because FNM did not make demands for rent: in its reply, FNM

9    argues that, because the apartment building was in the REAP program, it was the city, rather than

10   FNM, that was making rental demands.[43]

11        This argument raises an affirmative defense.  "The facts necessary to establish an

12   affirmative defense must generally come from matters outside of the complaint.  Thus, with some

13   exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer

14   motions brought under Rule 12(b)."  *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d

15   Cir. 2003).  One such exception is where the "defense raises no disputed issues of fact."  *Scott v.*

16   *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984).  For example, a motion to dismiss may be

17   granted based on an affirmative defense where the allegations in a complaint are contradicted by

18   matters properly subject to judicial notice.  *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

19   (9th Cir.2010).  In addition, a motion to dismiss may be granted based upon an affirmative

20   defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor,

21   nonetheless show that the affirmative defense "is apparent on the face of the complaint."  See *Von*

22   *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.2010).

23        Plaintiffs do not allege whether, after the building was placed in the REAP program, they

24   paid rent to FNM or deposited rent payments in the escrow.  The court concludes that FNM's

25   defense turns on a question of law, however, and can be decided on the face of the complaint.

26   ───────────────

27        [42]*Id.* at 3.

28        [43]Reply at 2.

FNM essentially argues that because the apartment building was in REAP, it cannot be held liable under §1942.4. The defense does not turn on whether plaintiffs deposited their rent payments in the escrow or paid rent directly to FNM, the fact that is unclear on the face of the complaint.

The provisions of REAP are set forth by Los Angeles Municipal Code § 162.00 et seq. Several provisions are relevant to determining whether plaintiffs can, and have, adequately alleged that FNM demanded or collected rent from them while the apartment building was in REAP. First, the code provides that once a building has been placed into REAP, tenants of that building may elect to pay rent to either their landlord or an escrow account maintained by LAHD. LA MUN.CODE § 162.07(A) ("[T]he Department shall establish as part of the REAP Trust Fund an account for the building into which tenants may deposit rent payments"). See also *Sylvia Landfield Trust v. City of Los Angeles*, – F.3d –, No. 11–55904, 2013 WL 4779664, *1 (9th Cir. Sept. 9, 2013) ("Tenants [of buildings placed into REAP] may choose to pay their reduced rent to either their landlord or an escrow account maintained by the Housing Department"). The code also provides that

> "[t]he gross amount of payment made into the account by or on behalf of a tenant shall be deemed as a payment in the same amount to the landlord, including, but not limited to, for the purpose of determining whether a tenant has paid rent with respect to Section 151.09A.1 of this Code or Section 1159 et seq. of the California Code of Civil Procedure." LA Mun.Code § 162.09(A)(1).

Finally, the code states that "[i]t is the purpose of the provisions of this article to provide a just, equitable and practical method, to be cumulative to and in addition to any other remedy available at law, to enforce the purposes of the Housing Code . . . and to encourage compliance by landlords with respect to the maintenance and repair of residential buildings." *Id.*, § 162.01(A).

As mentioned, the complaint does not allege whether, after the building was placed in the REAP program, the plaintiffs paid rent to FNM or deposited payments in the escrow. It does allege, however, that FNM demanded and/or collected rent from plaintiffs at all material times.[44]

---

[44]Complaint, ¶ 21.

1  This allegation clearly pleads that FNM demanded and/or collected tenants' rent.  Even if

2  plaintiffs deposited rent payments in the escrow, plaintiffs have adequately alleged that FNM

3  collected the rent, since the Los Angeles Municipal Code states that payments deposited in the

4  REAP escrow shall be deemed "payment[s] in the same amount to the landlord."  LA Mun.Code

5  § 162.09(A)(1).

6  The Code also provides that its provisions are cumulative to any other remedy at law.

7  Section 1942.4 is such a remedy.  That statute does not provide an exception from liability for

8  buildings that are in the REAP program.  Indeed, allowing an exception for apartment buildings

9  that are so substandard they are in the REAP program would be counterintuitive, since the purpose

10  of § 1942.4 is to "provide tenants additional recourse when an unscrupulous landlord does not

11  abate a nuisance or repair a substandard condition after being notified of the need to do so by a

12  housing code enforcement officer."  California Bill Analysis, A.B. 647 (July 7, 2003).  The only

13  landlords the statute excepts from liability are those pursuing rights under California Government

14  Code § 7060 (providing that landlords can go out of business).  CAL. CIV. CODE § 1942.4(f).  The

15  statute's otherwise unqualified language specifically states that a plaintiff who satisfies each of the

16  four requirements can recover against a landlord who demands rent.[45]  Accordingly, the court

17  concludes that plaintiffs have adequately alleged that FNM demanded and/or collected rent from

18  them, as required to state a claim for violation of § 1942.4.

19  Plaintiffs' complaint contains sufficient factual content to satisfy the pleading standards of

20

21

22  [45]If this provision of the municipal code indeed shielded a landlord from liability under

23  § 1942.4, it might well be preempted because it conflicted with the unqualified language of the statute.  "If otherwise valid local legislation conflicts with state law, it is preempted by such law

24  and is void.  A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication. . . .  [L]ocal legislation

25  is 'contradictory' to general law when it is inimical thereto."  *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897, 898 (1993) (citations omitted).  Cf. *Palmer/Sixth Street Properties,*

26  *L.P. v. City of Los Angeles*, 175 Cal.App.4th 1396, 1410 (2009) (holding that a local ordinance

27  requiring landlords to provide units at "regulated rent levels" was inimical to, and therefore preempted by, a state law allowing all landlords to "establish the initial rental rate for a dwelling

28  or unit").

Rule 8. They allege that FNM demanded and/or collected rent from them at all material times,[46] and that this occurred after the conditions set forth in § 1942.4 were satisfied. Plaintiffs have adequately pled that these four conditions have been met. First, they allege that the apartment building "substantially lacks nearly every standard characteristic" set forth in § 1941.1 of the Los Angeles Municipal Code and/or Health and Safety Code §§ 17920.3 and 17920.10.[47] They plead, for example, that the building has – among other substandard conditions – inadequate weather protection, defective plumbing, defective electrical wiring and equipment, unsafe flooring, improperly maintained and/or broken heating and ventilation appliances, and a "severe vermin infestation."[48] Such allegations, if proven, are sufficient to prevail in an action under § 1942.4. *McNairy v. C.K. Realty*, 150 Cal.App.4th 1500, 1504 (2007) ("Given the extent of the testimony . . . it is reasonable to infer that, at least, the entire complex has had serious unresolved roach and water problems throughout. Moreover, the court finds that these problems are enough to conclude that the apartment complex was 'untenantable' and subject to Civil Code section 1942.4 as pled by plaintiffs"). Plaintiffs also contend that an LAHD officer inspected the apartment building on October 6, 2009, and issued written citations and a notice and order to comply.[49] They assert that, despite the citations and notice, the conditions continued to exist through the date the complaint was filed, and that FNM had not adequately addressed them.[50] Plaintiffs allege that FNM does not have good cause for the delay in removing or repairing the conditions, that they complained about the conditions to FNM, and that FNM is an experienced owner and/or manager of multi-unit residential properties, and is or should have been aware that absent appropriate maintenance and

---

[46]Complaint, ¶ 21.

[47]*Id.*, ¶ 28.

[48]*Id.*

[49]*Id.*, ¶ 4.

[50]*Id.*, ¶ 10.

professional pest control, severe habitability problems will develop.[51]   These allegations are sufficient to claim that FNM did not have good cause for failing to remedy the conditions of the apartment building.   Last, plaintiffs claim that they did not cause the conditions in the apartment building through any of their acts or omissions.[52]

Plaintiffs have also adequately alleged that they suffered damages.   Section 1942.4 provides that landlords who violate the statute are liable to tenants for the actual damages sustained by them and for special damages of not less than $100 and not more than $5,000.   Under the statute, "'actual damages' includes damages for emotional distress." *McNairy*, 150 Cal.App.4th at 1506. Plaintiffs have alleged that they suffered actual damages by paying rent while living in the substandard apartment building, and because the poor conditions of the apartment building have caused them property damage, bodily injury, illness, mental stress and emotional damage.[53]   For these reasons, the court concludes that plaintiff's have adequately pled a claim under § 1942.4. See FED.R.CIV.PROC. 8 ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief").

As discussed, plaintiffs also seek an injunction directing FNM to repair the premises.[54] Section 1942.4(c) provides that "[a]ny court that awards damages under this section may also order the landlord to abate any nuisance at the rental dwelling and to repair any substandard conditions of the rental dwelling, . . . which significantly or materially affect the health or safety of the occupants of the rental dwelling and are uncorrected."   FNM contends that, because it is no longer the property owner, it cannot be ordered to repair the property.[55]   The court agrees. The plain language of the statute states that only "the landlord" may be enjoined.   The current

---

[51]*Id.*, ¶¶ 12, 30.

[52]*Id.*, ¶ 31.

[53]*Id.*, ¶ 32.

[54]*Id.*, ¶¶ 35-36.

[55]Motion at 5.

1  landlord, and owner, of the apartment building is LA Legends.  FNM does not have authority to

2  enter the premises without permission.  Nor does it have any continuing obligation to maintain the

3  apartment building.   Accordingly,  the  court  cannot  order  FNM  to  abate  any  nuisance  at  the

4  apartment building.  Because FNM is not the current landlord of the property, the court dismisses

5  the plaintiffs' request for injunctive relief against FNM under § 1942.4(c) with prejudice.

6

7                              **III.  CONCLUSION**

8          For the reasons stated, the court denies FNM's motion to dismiss the complaint under Rule

9  12(b)(7) because it finds that FNM has not met its burden of showing that there are indispensable

10 parties whose joinder is not feasible.  The court also denies FNM's motion to dismiss plaintiffs'

11 cause of action for violation of § 1942.4, except that it grants FNM's motion to dismiss plaintiffs'

12 request for injunctive relief against FNM with prejudice.

13

14 DATED: October 8, 2013

15                              _____
                               MARGARET M. MORROW
                               UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28